UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWN SHELTRA,<br><br>               Plaintiff,<br><br>vs.<br><br>WARDEN JAY CHRISTENSEN, D.W. McKAY, D.W. DIETZ, SGT. ANDERSON, SGT. TAYLOR, CPL. FRAHS, and C/O CRAIG,<br><br>               Defendants. | Case No.  1:20-cv-00215-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Complaint of Plaintiff Shawn Sheltra, an Idaho Department of Correction (IDOC) prisoner, was conditionally filed by the Clerk of Court due to his status as a prisoner and pauper. (Dkts. 3, 1.) A "conditional filing" means that Plaintiff must obtain authorization from the Court to proceed. After reviewing the Complaint, the Court has determined that Plaintiff will need to amend his pleadings if he desires to proceed.

### STANDARD OF LAW AND INSTRUCTIONS FOR AMENDMENT

#### 1. Standard of Law for Screening Complaints

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, the Prison Litigation

Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for lack of a cognizable legal theory or failure to plead sufficient facts to support a cognizable legal theory under the *Iqbal/Twombly* standard. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989). Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend as explained in *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## 2. Background and Instructions for Amendment

Plaintiff alleges that his constitutional rights were violated in various ways, on various dates, by various prison officials over the past two years of his incarceration. Some of his claims are supported by some facts, while others are supported by virtually no facts. Some of his claims appear implausible. However, the Court will provide

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

Plaintiff with an opportunity to amend. For purposes of judicial efficiency, the Court will order the Clerk of Court to sever Plaintiff's claims into several new lawsuits, grouping the claims that appear to be related. The Clerk will file Plaintiff's current Complaint as the operative pleading in each new case. After the cases are opened, the Court will issue an order requiring Plaintiff to submit an amended complaint.

Defendants named in this and the new lawsuits need not file anything unless Plaintiff is authorized to proceed after court screening of the amended pleadings.

## REVIEW OF CLAIMS

Plaintiff attempts to string together a series of unrelated claims by alleging that prison officials concocted and carried out a two-year-long conspiracy to harm him. The claim of conspiracy will remain in this lawsuit, but Plaintiff will not be permitted to proceed upon the conspiracy claim until the other claims that form the basis of the conspiracy have been litigated. Of the groups of claims the Court discusses below, Claim Groups (1) and (2) will be addressed in this action. Claim Groups (3) through (7) will be divided into separate lawsuits according to the groupings and headings below.

1. **October 1, 2018: Plaintiff Wrote a PREA Complaint about Prisoner Bryan Lankford that Defendant Deputy Warden McKay Covered up**

On October 1, 2018, Plaintiff alleges that his cellmate, prisoner Bryan Lankford, sexually assaulted him. Plaintiff reported the assault to prison officials under the Prison Rape Elimination Act (PREA) procedures.

The complaint was investigated by Kristina Waldram, MA. On October 30, 2018, Ms. Waldram completed a prison PREA investigation form and determined that the

PREA complaint allegations were unfounded, meaning "investigated and determined not to have occurred." (Dkt. 3-1, p. 1.) Plaintiff asserts that Deputy Warden/PREA Coordinator Timothy McKay covered up the PREA complaint by ordering Plaintiff to write a letter of apology to Mr. Lankford.

These allegations on their own state no federal cause of action. Simply because Deputy Warden McKay ordered Plaintiff to write an apology letter to Mr. Lankford *after* Ms. Waldram determined that there was no factual basis for the sexual assault allegation does not mean that McKay was attempting to "cover up" the complaint. Although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678. (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Plaintiff has shown no connection between Ms. Waldram and Deputy Warden McKay to support a claim of any wrongdoing on McKay's part. This claim is subject to dismissal for failure to state a claim upon which relief can be granted. If Plaintiff has additional allegations about this incident, he may file an amended complaint in this action.

**ORDER GOVERNING AMENDMENT - 4**

2. **November 24, 2018: Defendant Frahs Failed to Intervene when Plaintiff Reported that Prisoner Cody Willard Threatened Him after Willard Learned that Prison Officials Accused Plaintiff of Stealing Willard's Phone Time**

On November 24, 2018, Plaintiff submitted a concern form to Defendant Frahs. Plaintiff reported that inmate Cody Willard threatened to assault and batter him because staff informed Willard that Plaintiff was being accused of stealing Willard's phone time. On November 28, 2018, Frahs responded to the concern form by saying that he would look into Plaintiff's allegations. Plaintiff alleges that Frahs endangered him by ignoring the notice of the threat of harm. It is unclear whether Willard ever harmed Plaintiff.

To state a claim for an Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must allege facts showing that he was or is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When a prison official is deliberately indifferent to a substantial risk of serious harm, that conduct violates the Eighth Amendment. *Id.* at 828. Deliberate indifference exists when an official is (1) "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and (2) actually draws such an inference. *Id.* at 838.

The United States Court of Appeals for the Ninth Circuit has explained that a showing that a prison official had a "sufficiently culpable state of mind" under *Farmer* "entails something more than mere negligence ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2006) (citing *Farmer*, 511 U.S.

at 835). In *Hearns*, where a "series of planned attacks and religious-related violence" by the ruling Muslim group against other Muslims at the prison was "'longstanding, pervasive, [and] well-documented,'" the court held that the allegations in the complaint "were sufficient to raise an inference that the prison officials acted with deliberate indifference, or knew that Hearns faced a substantial risk of serious harm and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Hearns*, 413 F.3d at 1041 (quoting *Farmer*, 511 U.S. at 847).

Plaintiff may not proceed on this claim without something more. It does not appear that Plaintiff suffered any harm from living with Willard. If Plaintiff has other facts showing that he reported a risk of harm posed by Willard to Frahs, and, thereafter, he was harmed by Willard, he may file an amended complaint in this action and attach the relevant concern forms and grievances. If he has no other facts, he may not proceed on this claim.

3. **June 12, 2019: Christensen (corrected spelling), McKay, and Anderson Retaliated against Plaintiff for Attempting to be a Co-Plaintiff in Prisoner Jody Carr's Class Action Lawsuit concerning Living Conditions on Tier D-1**

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an

injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

Plaintiff asserts that, on June 11, 2019, he drafted and signed a four-page affidavit in support of frequent litigator/prisoner Jody Carr, attempting to be a plaintiff/class representative in Mr. Carr's class action lawsuit alleging that Deputy Warden McKay and the other Defendants customarily retaliated against prisoners who made PREA complaints by (1) soliciting false testimony from prisoners and prison employees to cover up the truth of relevant events surrounding sexual assaults and/or rape; (2) writing disciplinary offense reports (DORs) against prisoners who lodged complaints; (3) transferring prisoners who made PREA complaints into segregation on D-1 (close custody); and (4) telling other prisoners on the unit that the reporting prisoner had "snitched" on the other prisoners who had sexually assaulted or raped the reporting prisoner, in an effort to silence the reporting prisoner and to have the reporting prisoner

**ORDER GOVERNING AMENDMENT - 7**

further sexually and/or physically assaulted, to dissuade the reporting prisoner from pursuing the PREA complaint.

Plaintiff further alleges that, on evening of the same day he wrote the affidavit, June 11, 2019—when the ink was barely dry—Mr. Carr's cellmate, James Wolfe, stole Plaintiff's affidavit from Mr. Carr and gave it to prison officials in the D-1 office while Mr. Carr was sleeping. Plaintiff asserts that, as a result, Mr. Carr was transferred to segregation, fulfilling the prophecy Plaintiff had made in his affidavit just hours before—that retaliation for making PREA complaints was occurring on D-1.

Perhaps the Court is wrong about the security system of the prison, but it seems plainly implausible that Mr. Wolfe, a prisoner, would be able to leave his cell at will in the middle of the night—for any reason. It is not an apartment complex—it is a prison. Plaintiff does not identify which prison officials were on staff the night of June 11, 2019, or how or whether those officials notified Defendants of the contents of the affidavit so quickly that Mr. Carr was taken to segregation the next day. Plaintiff does not state the reasons prison officials took Mr. Carr to segregation, and whether there was any evidence to support Mr. Carr's placement in segregation. Importantly, Plaintiff also does not state any reason prison officials would have to cover up PREA complaints—for example, who are they hiding the complaints from and what advantage would it be to cover them up?

Plaintiff shows no causal connection between his signing an affidavit in favor of Jody Carr's lawsuit and Jody Carr's placement in segregation. In fact, placing Jody Carr in segregation can hardly be considered an act of retaliation against Plaintiff—without facts to show the connection. Nor does Plaintiff identify which prisoners previously made

**ORDER GOVERNING AMENDMENT - 8**

a PREA complaint and suffered retaliation—the who, what, where, when, how, and why of those prisoners' similar experiences must be included in the amended complaint. There is simply not enough in the existing Complaint to permit Plaintiff to proceed on this claim.

Nevertheless, to allow Plaintiff the opportunity to amend, the Court will order the Clerk of Court to sever these claims into a new case by filing the Complaint under a new case number. The Court will permit Plaintiff to file an amended complaint in that action, answering the Court's questions set forth above and setting forth facts to support all of the elements of a retaliation claim.

   4. **February 14, 2020: Sergeant Taylor Failed to Protect Plaintiff;
      February 17, 2020: Unknown Official's Failure to Protect Plaintiff**

Plaintiff alleges that, on February 14, 2020, he gave Sergeant Taylor notice of safety concerns and his fear of being attacked by "Young," due to him threatening Plaintiff to give him pills. On February 17, 2020, Plaintiff alleges that he wrote a concern form to an unidentified prison official that "KC and them are coming down" and "I need to go up or he will come down to get me."

Plaintiff seems to be attempting to state a failure to protect claim, but he has provided insufficient facts to do so. Because these allegations arise from a different time period and concern a different situation, the Clerk of Court will be ordered to sever this claim into a different lawsuit, and file a copy of the Complaint in this action as the operative pleading in the new action. The Court will provide Plaintiff with an Order to file an amended complaint when the Clerk of Court has opened the new case.

**ORDER GOVERNING AMENDMENT - 9**

5. **February 2020: Prison Officials Tried to Extort Plaintiff or Cover up Other Prison Staff Members' Extortion; March 2020: Prison Officials Housed Plaintiff with Willard again, in Retaliation for Plaintiff's Exercise of First Amendment Activity**

The facts supporting this claim are extremely unclear. Here is what the Court is able to piece together from the pleadings, and Plaintiff is invited to correct any misinterpretations in his amended complaint. Plaintiff volunteered to be an unpaid wheelchair pusher for another prisoner, whom Plaintiff identifies as a crippled Catholic priest. Prison officials noticed that Plaintiff's prison trust account records show that a person from the outside was sending Plaintiff money. Prison officials believed that the money might have been intended for the wheelchair-bound prisoner, even though it was sent to Plaintiff. Prison officials also apparently believed that Plaintiff had involved other prisoners in receiving money, and/or extorting money from the wheelchair-bound prisoner or the outside person.

Plaintiff alleges that, in February 2020, he told Defendants Frahs and Taylor that *he* was being extorted and asked if they were going to keep him safe. He asserts that it was actually *prison staff* who gave him money for taking care of the prisoner priest. Defendants Frahs and Taylor forwarded Plaintiff's allegations to the Investigations Unit. Plaintiff alleges that Frahs, Taylor, and Anderson covered up Plaintiff's claims against the other prison staff persons who were extorting him.

Amendment is required. Plaintiff will need to provide facts showing a causal connection between his allegations of extortion and Defendants Frahs, Taylor, and Anderson. It is unclear exactly who was extorting Plaintiff and for what reason. It is

**ORDER GOVERNING AMENDMENT - 10**

unclear what the threat to Plaintiff was. It is unclear whether that threat ever came to fruition and harmed Plaintiff. It is unclear why staff would be paying Plaintiff to push the other prisoner's wheelchair around. It is unclear who the outside person was, identified only as "Richard Martindale" on Plaintiff's prison trust account statement. (Dkt. 2.) It is unclear what the object of the extortion was. It is unclear what connection the extortioners had with Frahs, Taylor, and Anderson, and why they would be personally motivated to cover up Plaintiff's claims against those other prison staff. The Court will wait for Plaintiff to fill in the blanks to this mystery in his amended complaint.

A related claim is that, in April 2020, Defendants retaliated against Plaintiff for reporting in concern forms and grievances that he was being extorted by prison staff over the wheelchair-bound prisoner. Defendants Frahs, Taylor, McKay, and Christensen had Plaintiff placed in "The Hole" from April 2, to April 8, 2020. Plaintiff asserts that, on April 8, 2020, Defendant Sergeant Anderson of the Investigations Unit wrote Plaintiff a DOR for extortion. Plaintiff asserts that, on April 16, 2020, unknown prison officials placed him back on the D-1 Tier with "known threat" prisoner Willard as his cellmate.

There are too many holes in this retaliation claim to permit Plaintiff to proceed. He will be required to provide additional facts supporting all of elements of a retaliation claim, as set forth above.

These two claims are unrelated to any of the other claims, and they will be severed into a new case. Plaintiff will also be required to provide the concern forms and grievances showing that he reported being extorted by prison staff. Plaintiff must also

**ORDER GOVERNING AMENDMENT - 11**

provide the DOR paperwork with his amended complaint, as well as any paperwork documenting the reasons he was placed in segregation.

### 6. March 3, 2020 and March 4, 2020: Taylor, Dietz, and Christensen Failed to Protect Plaintiff; March 2020: Prison Officials Housed Plaintiff with Willard again in Retaliation for Plaintiff's Exercise of First Amendment Activity

On March 3, 2020, and March 4, 2020, Plaintiff wrote a concern form to Warden Christensen informing him that Plaintiff is gay and is sex offender. It is unclear whether Plaintiff asked for protective custody On March 18, 2020, Sergeant Taylor dismissed Plaintiff's claims, concluding that there were no active safety concerns with any inmates currently housed at ISCC. Plaintiff alleges that Taylor's response "facilitated" an April 17, 2020 attack by a paid hit man, prisoner Jordan Goecker (not Willard).

After Sergeant Taylor dismissed the claims, Deputy Warden Dietz failed to protect Plaintiff by dismissing his claims. Dietz allegedly lied when he responded, "You have zero documented safety concerns on D-1." Plaintiff alleges that this failure to act "facilitated" the April 17, 2020 attack by the paid hit man (not Willard). Plaintiff will be required to provide the concern forms and grievances with his amended complaint.

On appeal of the grievance, Warden Christensen ignored his pleas for help and rehoused Plaintiff with Willard. Plaintiff asserts that this failure to act "facilitated" the April 17, 2020 attack by the paid hit man Goecker (not Willard). Plaintiff will be required to file with his amended complaint a copy of the grievance appeal and all prison documentation regarding these allegations and the attack on him.

**ORDER GOVERNING AMENDMENT - 12**

On an unidentified date in March 2020, Plaintiff asserts that an unidentified prison official housed Plaintiff with Willard in Cell #40 in Close Custody Tier D-1 in retaliation for Plaintiff's unidentified First Amendment behavior or statements. Plaintiff asserts that he notified an unidentified prison official of a threatened assault by Willard between March and April 2020.

The Clerk of Court will be ordered to sever these claims about the failure to protect against Willard into a separate suit, and Plaintiff will be required to file an amended complaint. Plaintiff must file copies of the concern forms, grievances, and grievance appeals as exhibits to his amended complaint to show that he specifically identified Willard as a threat to his safety. He must clarify whether he was harmed by Willard.

### 7. April 17, 2020: Prison Officials Hire Hit Man to Attack Plaintiff

Plaintiff alleges that, on April 17, 2020, prison officials paid a hit man, Jordan Goecker, to attack Plaintiff in the dayroom. Plaintiff alleges that Defendants facilitated this attack in an effort to silence Plaintiff and chill his First Amendment activities. However, he provides no supporting facts.

Plaintiff further alleges that unknown prison officials allowed this attack to continue until another prisoner pressed the emergency button to notify prison officials of the attack. Plaintiff alleges that he suffered serious physical and mental injuries as a result of the attack. Plaintiff alleges that he was again housed with Willard when he returned from the hospital.

The Clerk of Court will be ordered to sever this claim, and Plaintiff will be permitted to provide additional facts to support his claims. For example, he must provide facts showing who paid the hit man "Jordan Goecker," how Plaintiff knows Goecker was paid, what facts show that the hit man was acting on behalf of Defendants, which particular Defendants knew that Plaintiff was engaging in protected First Amendment activities (and which activities Defendants intended to chill), which Defendants were in a position to see and stop the attack when it happened, and whether Willard harmed Plaintiff after he returned from the hospital after having been beaten by Goecker. Plaintiff will be required to submit copies of his concern forms and grievances regarding the attack and copies of prison records documenting the attack.

## ORDER

**IT IS ORDERED:**

1. As set forth above in sections (3) through (7), the Clerk of Court shall open new cases for Plaintiff, with his Complaint (Dkt. 3) as the operative pleading in each case. Because these cases are being severed from this case and need additional screening, the cases shall be assigned to this Court. Once the cases are open, the Court will issue an order in each action for Plaintiff to file an amended complaint.

2. If Plaintiff desires to proceed on the claims discussed in sections (1) and (2) above, he must file an amended complaint in this action, addressing only the claims discussed in sections (1) and (2), within 45 days after entry of this Order. Plaintiff need not amend the conspiracy claim until his other claims have been adjudicated or until further order of the Court.

**ORDER GOVERNING AMENDMENT - 14**

3. Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice to reconsideration later in this case, when the Court has additional factual information.

DATED: June 19, 2020

B. Lynn Winmill
U.S. District Court Judge